UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KAMEL PRUDE,

                              Plaintiff,

-against-                                              **COMPLAINT**

LOGISTICS ONE TRANSPORT, INC.                         Index No. :  1:20-CV-0674 (DNH/ATB)

                              Defendant.

---

Plaintiff, Kamel Prude (hereinafter referred to as "Prude" or "Plaintiff"), by and through

his attorneys, FitzGerald Morris Baker Firth, P.C., hereby complains of Defendant Logistics One

Transport, Inc. ("LOTI") (hereinafter referred to as "Defendant" or "LOTI"), upon information

and belief, as follows:

## NATURE OF CASE

1.      Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as

amended 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. §1981, and the laws of the State of New

York, based upon the supplemental jurisdiction of this Court pursuant to United Mine Workers

of America v. Gibbs, 383 U.S. 715 (1966) and 28 U.S.C. § 1367 seeking declaratory and

injunctive relief and damages to redress the injuries Plaintiff has suffered as a result of, inter alia,

unlawful discriminatory practice because of race and national origin, hostile work environment,

and retaliation by his employer.

## JURISDICTION AND VENUE

2.      This action is authorized by and instituted under  Title VII of the Civil Rights Act

of 1964, as amended 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. §1981. Plaintiff invokes the

jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331, 1337, and 1343(a)(4). The matter in controversy arises under an Act of Congress regulating commerce and relating to discrimination based on race, national origin, hostile work environment and retaliation and exceeds all statutory thresholds for amounts in controversy.

3.      The venue of this action is properly placed in the Northern District of New York pursuant to 28 U.S.C. § 1391. Plaintiff resides in this District. Upon information and belief, Defendant was and still is doing business in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

4.      The Court has supplemental jurisdiction over the State laws.

5.      On or about December 21, 2018, Plaintiff submitted a Charge with the EEOC.

6.      On or about May 5, 2020, Plaintiff received a Notice of Suit Rights from the EEOC.

7.      Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Notice of Suit Rights.

**PARTIES**

8.      Plaintiff, Kamel Prude, is a black male residing in Albany County, New York.

9.      At all relevant times, Plaintiff was an "employee" as defined in Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e(f).  Plaintiff was also an "employee" as defined in the New York State Human Rights Law, Executive Law § 290 *et seq*.

10.      Upon information and belief, Defendant LOTI is a domestic business corporation with its principal place of business located in Saratoga County.

11.     At all relevant times, Defendant was and still is an "employer" as defined in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(b) and the New York State Human Rights Law, Executive Law § 290 *et seq.*

12.     Defendant has continuously been engaged in an industry affecting commerce within the meaning of Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000-e(h).

## STATEMENT OF FACTS

13.     Mr. Prude is an African-American male who has been subjected to a pattern of harassment and discrimination by Defendant during the course of his employment with LOTI from December 2015 through his constructive discharge in September of 2018.

14.     Plaintiff began employment in LOTI's Transportation Division as a dispatcher working the night shift from 8:00 p.m. to 8:00 a.m.

15.     One of the duties of the dispatcher position was to coordinate and communicate with LOTI's drivers.

16.     Mark Murphy was one of LOTI's drivers that worked during Plaintiff's shift and who would call into dispatch.

17.     Murphy began referring to Plaintiff in disparaging and offensive terms.

18.     Murphy used derogatory racial slurs directed towards Plaintiff including calling Plaintiff, "black ass," "raccoon," "coon," and "Uncle Tom/Tom."

19.     Plaintiff notified and complained of the discrimination to his immediate supervisor, Richard Theophel.

20.     Upon information and belief, Theophel reported the discrimination to his supervisor, Thomas Moss.

21.    Theophel's advice to Plaintiff was to try and be the bigger person.  In other words, Defendant's advice to Plaintiff was to take his discrimination like a man and stop complaining.

22.    Having set the culture that racial slurs were acceptable and that the onus was on the recipient to rise above them, in January of 2017 Defendant's employee, Ward Trackey, renamed and referred to Martin Luther King, Jr. Day, as "the nigger's birthday."

23.    Upon information and belief, Defendant determined that while racial slurs such as "black ass," "coon," and "Uncle Tom" were acceptable, "nigger" was not and counseled Trackey on his improper use of racial slurs.

24.    Upon information and belief, Trackey later clarified his comment in an email to the New York State Division of Human Rights in which he explained that his comment was not directed at Plaintiff and that he thought Plaintiff was "a better person than this."  Attached hereto and made part hereof as **Exhibit "B"** is a copy of Trackey's email to NYS DHR.

25.    Plaintiff was also confronted by another of Defendant's drivers, Frank Russell.

26.    Russell lamented to Plaintiff about "city guys" coming upstate and "messing up property values."

27.    Plaintiff asked Russell what he meant by that to which Russell expounded that "Blacks" and "Hispanics" are all on welfare while he works hard and struggles.

28.    Plaintiff again reported the incident to his supervisor Theophel.

29.    Upon information and belief, Theophel again told Plaintiff that he should "hold his head up" and ignore Russell.

30.    While these incidents were developing, in May of 2017 another employee of Defendant, Christopher LaBarge, began referring to Plaintiff as "jigaboo."

4

31.     Upon information and belief, LaBarge's racism was known to Defendant.

32.     Upon information and belief, Defendant counseled LaBarge about his use of racial slurs but determined that he was not targeting Plaintiff.

33.     With what can only be described as Defendant's blessing and approval, LaBarge continued to address Plaintiff as "jigaboo."

34.     During the same time period, Murphy continued to refer to Plaintiff as "coon."

35.     LaBarge and Murphy were so blatant and brazen in their racial epithets that they not only openly directed the slurs at Plaintiff but, upon information and belief, did so in front of supervisor Theophel.

36.     Upon information and belief, Theophel informed Moss of what was transpiring.

37.     Upon information and belief, Moss did nothing to alleviate the situation.

38.     Murphy's derogatory and abusive comments toward Plaintiff got so bad that Plaintiff would use the caller ID on his dispatch phone to flag Murphy's calls and ask another dispatcher to take them.

39.     Accordingly, despite making repeated complaints to Theophel and Moss, Plaintiff was left to his own devices to avoid the rampant discrimination and harassment in Defendant's workplace.

40.     In order to avoid the continued discrimination and harassment, Plaintiff requested to be transferred to the day shift.  His request was denied.

41.     The reason Plaintiff was given for his denial to the day shift was that since he was black he was better suited for nights.

42.     Subsequently, Plaintiff was told that his position was being eliminated and that he was being transferred to the Brokerage Division.

5

43.     Plaintiff was forced into a rotating schedule with reduced hours effectuating a demotion.

44.     Plaintiff then applied for an open position in the Customer Service Division.

45.     Despite being qualified for the position, Plaintiff was told by his then supervisor, James Clark, that his application was not accepted because he spoke too "hoodish".

46.     Clark further demonstrated his intolerance of Plaintiff by calling him a "coon" and a "moron" and berating him in front of others calling him "stupid".

47.     Plaintiff reported Clark's behavior and comments to Moss, Karli Hall, a Manager in the Brokerage Division, and Defendant's HR Manager, Kathy Occhiogrosso.

48.     In response, Occhiogrosso held a meeting with Plaintiff and Clark and, upon information and belief, determined that Plaintiff was to blame for taking Clark's disparaging comments the wrong way.

49.     In the late fall of 2017 while Plaintiff was sitting down, LaBarge saw him and came over to where he was sitting.  LaBarge attempted to make small talk and then took out a banana and dangled it over Plaintiff's head while making monkey noises while shouting to others, "look at my little monkey" and "look at my jigaboo".

50.     Plaintiff was humiliated and knocked the banana out of LaBarge's hand and then went outside to calm down.

51.     When Plaintiff came back in, LaBarge picked up where he left off and tried to hang the now empty banana peel over Plaintiff's head.

52.     Upon information and belief, there were a number of witnesses to LaBarge's racist hate speech.

53.    Upon information and belief, multiple employees reported the incident to Defendant.

54.    Plaintiff reported the incident to Ms. Hall who, upon information and belief, reported it to Ms. Occhiogrosso.

55.    Upon information and belief, LaBarge was counseled on the incident but no investigation was conducted and Plaintiff was informed by Occhiogrosso and Moss that LaBarge was just joking and that is just the way he is.

56.    As a result of the actions of Defendants, their agents, servants, and/or employees, Plaintiff has suffered severe emotional distress, degradation, humiliation, and physical injuries.

57.    In January of 2018 Plaintiff applied for an open Carrier Acquisition Coordinator (CAC) position through Clark.

58.    Upon information and belief, Clark created a test in Microsoft Excel to determine each applicant's proficiency with the software.

59.    Clark administered the test to Plaintiff and determined that Plaintiff's lacked the required proficiency with Excel to fill the CAC position.

60.    Upon information and belief, Plaintiff had been using Excel throughout his employment with LOTI including while he was working as nighttime Dispatcher as well as in his then current position in Track and Trace.

61.    Upon information and belief, the level of Excel proficiency required for the CAC position is the same as for the Dispatch and Track and Trace positions.

62.    Upon information and belief, Clark's Excel test was pretext for discrimination.

63.    Despite Plaintiff's proficiency at using Excel for other positions within LOTI, Clark hired an outside applicant who, upon information and belief, had no industry experience.

64.     Upon information and belief, the person that Clark hired to fill the CAC position was a white male.

65.     Throughout this time, Clark continued to single out Plaintiff with the same racial slurs and disparaging comments that Plaintiff had previously complained of.

66.     At one point in May of 2018 Clark became so enraged at Plaintiff that he ordered Plaintiff to the warehouse where he began screaming at and pushing Plaintiff.  Then, in a threatening tone, Clark told Plaintiff he had a gun nearby.

67.     Upon information and belief, the altercation between Clark and Plaintiff was witnessed by Ms. Hall.

68.     Upon information and belief, Ms. Hall reported the incident to William McNeary, Defendant's CEO and Defendant's HR Manager, Kathy Occhiogrosso.

69.     Upon information and belief, Plaintiff's co-workers who witnessed Clark's use of discriminatory slurs aimed at Plaintiff informed Ms. Hall.

70.     Ms. Hall asked Plaintiff if he had told anyone about Clark's behavior.  Plaintiff told Ms. Hall that he had reported the incidents to Moss but that nothing was ever done to address it.

71.     Upon information and belief, Ms. Hall reported the incidents regarding Clark to Ms. Occhiogrosso.

72.     Upon information and belief, in May of 2018 a meeting was held between Occhiogrosso, Clark, Moss, Hall and Plaintiff.

73.     Among other things discussed at the May 2018 meeting, Plaintiff asked about prospects for other positions that would better accommodate his schedule.

74.     Upon information and belief, Clark asked Plaintiff what he would do if there were no other positions available, to which Plaintiff responded that he was unsure but may move back to Brooklyn to help his brother.

75.     In response to Plaintiff's answer, Clark remarked to the group, "You know what that means, he's going to go back to selling drugs."

76.     Based upon the ongoing discrimination by LOTI, including having to continue endure racist remarks and displays, as well as being denied advancement opportunities, Plaintiff was constructively discharged in September of 2018.

## CONDITIONS PRECEDENT TO ACTION

77.     Plaintiff has complied with all the jurisdictional prerequisites to action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

a.  In accordance with the time prescribed by Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e-5(e) on or about December 21, 2018, Plaintiff filed a charge and complaint of unlawful employment practices on the basis of race, and national origin, hostile work environment and retaliation with the New York State Division of Human Rights.

b.  On or about the same date as the aforementioned Division of Human Rights charge was filed, the Division of Human Rights caused a copy of said charge to be filed with the United States Equal Employment Opportunity Commission (EEOC).

c.  On or about June 18, 2019, the Division of Human Rights issued a finding of Probable Cause to believe that Defendant engaged in unlawful discriminatory practices with respect to the charge filed on December 21, 2018.

9

d.  On or about February 6, 2020, a Final Order was issued from the Division of Human Rights granting dismissal for administrative convenience.

e.  On or about May 5, 2020, the EEOC sent notification to Plaintiff that, with respect to the charge of discrimination filed on December 21, 2018, he had the right to sue within 90 days of the receipt of the notification. A copy of the EEOC Right to Sue is attached hereto as Exhibit "A."

f.  Plaintiff has filed this action within 90 days of the receipt of the notifications of the right to sue from the EEOC.

## AS AND FOR THE FIRST CAUSE OF ACTION

78.    Plaintiff realleges and restates the preceding numbered paragraphs as if fully set forth herein.

79.    Plaintiff was subjected to different terms and conditions of employment than similarly situated Caucasian employees and had been subjected to a hostile work environment.

80.    Plaintiff was subjected to a continuing course of severe and pervasive racial discrimination by Defendant, its agents, servants, and/or employees.

81.    Plaintiff was required to work in a racially hostile environment where he had been harassed by employees of Defendant, and/or its agents, servants, and/or employees, who were aware that Plaintiff was subjected to a hostile work environment; however, Defendant refused to investigate, stop, or prevent the discriminatory behavior from continuing.

82.    The effect of the policies and practices pursued by Defendant, as alleged above limited, classified, and discriminated against the Plaintiff in ways which resulted in the loss of his job and deprived him of employment opportunities and otherwise adversely affected his status as an employee because of his race in violation of 42 U.S.C. § 2000e *et seq*.

10

83.     Defendant knew or in the exercise of reasonable diligence should have known of the wrongful and unlawful actions, conduct, and omissions of its agents, servants, and/or employees and took no remedial action.

84.     As a result of Defendant and its agents, servants, and/or employee's conduct, and omissions, including but not limited to those described above, Defendant discriminated against Plaintiff with respect to his compensation, terms, conditions, and privileges of employment constituting unlawful race discrimination in violation of Title VII of the Civil Rights Acts of 1964, as amended, 42 U.S.C. § 2000e-2(a), thereby entitling Plaintiff to relief under the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5.

85.     Defendant's wrongful acts, conduct, and omissions were intentional and wanton and done with malice and/or a reckless indifference to Plaintiff's rights and feelings in violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. As a result of Defendant's actions, conduct, and omissions, including but not limited to those described above, Plaintiff incurred damages, including but not limited to, lost back and future wages, employee benefits, lost employment opportunities, mental anguish, emotional distress, and embarrassment. Plaintiff is thereby entitled to an award of compensatory, punitive, and/or exemplary damages.

86.     As a direct and proximate result of Defendant's wrongful acts, conduct and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $ 2 million.

87.     Pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 e-5(k), Plaintiff is entitled to reasonable costs and attorneys' fees.

88.     Pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a jury trial as to all issues so triable.

## AS AND FOR A SECOND CAUSE OF ACTION

89.    Plaintiff realleges and restates the preceding numbered paragraphs as if fully set forth herein.

90.    Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

91.    Defendant, its agents, servants, and/or employees treated Plaintiff adversely because of his race and engaged in a knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

92.    Defendant discriminated against Plaintiff with respect to compensation, terms, conditions, and privileges of employment because of his race and in retaliation for his complaints and opposition to unlawful discriminatory conduct and in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

93.    Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiff's rights under the Human Rights Law of the State of New York.

94.    As a result of Defendant's actions, conduct, and omissions, including but not limited to those described above, Plaintiff incurred damages, including but not limited to, lost back and future wages, employee benefits, lost employment opportunities, mental anguish, severe emotional distress, and embarrassment.

95.    As a result of Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

96.    Pursuant to Article 15 of the New York Executive Law, as amended, § 297 (10), Plaintiff is entitled to reasonable costs and attorneys' fees.

12

97.     Plaintiff demands a jury trial as to all issues so triable.

## AS AND FOR A THIRD CAUSE OF ACTION

98.     Plaintiff realleges and restates the preceding numbered paragraphs as if fully set forth herein.

99.     As a result of these offensive acts, including but not limited to those described above, Defendant, its agents, servants, and/or employees, created a racially hostile working environment in which Plaintiff was intimidated, harassed, and undermined in his attempts to succeed.

100.    Throughout Plaintiff's employment with Defendant, Plaintiff brought the above-described unlawful conduct to the attention of his immediate supervisors.

101.    As a result, Defendant knew or through the exercise of reasonable diligence should have known of the wrongful and unlawful actions, conduct, and omissions of its agents, servants, and/or employees and took no remedial action.

102.    The effects of this hostile working environment were so severe and pervasive that it affected the terms, conditions, and privileges of the Plaintiff's employment, constituting unlawful racial harassment in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-2(a), thereby entitling Plaintiff to relief under the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(g).

103.    Defendant's wrongful acts, conduct, and omissions were intentional and wanton and done with malice and/or a reckless indifference to Plaintiff's rights and feelings in violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. As a result of Defendant's actions, conduct, and omissions, including but not limited to those described above, Plaintiff incurred damages, including but not limited to, lost back and future wages, employee benefits, lost employment

opportunities, mental anguish, emotional distress, and embarrassment. Plaintiff is thereby entitled to an award of compensatory, punitive, and/or exemplary damages.

104.    As a direct and proximate result of the Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

105.    Pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 e-5(k), Plaintiff is entitled to reasonable costs and attorneys' fees.

106.    Pursuant to Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a jury trial as to all issues so triable.

## AS AND FOR A FOURTH CAUSE OF ACTION

107.    Plaintiff realleges and restates the preceding numbered paragraphs as if fully set forth herein.

108.    Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

109.    During the course of Plaintiff's employment, Defendant, its agents, servants, and/or employees subjected Plaintiff to unwelcome comments, insults and other racially offensive conduct thus creating a hostile work environment and engaged in a knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

110.    Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiff's rights under the Human Rights Law of the State of New York.

111.    As a result of Defendant's actions, conduct, and omissions, including but not limited to those described above, Plaintiff incurred damages, including but not limited to, lost

14

back and future wages, employee benefits, lost employment opportunities, mental anguish, severe emotional distress, and embarrassment.

112.    As a result of Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

113.    Pursuant to Article 15 of the New York Executive Law, as amended, § 297 (10), Plaintiff is entitled to reasonable costs and attorneys' fees.

114.    Plaintiff demands a jury trial as to all issues so triable.

## AS AND FOR A FIFTH CAUSE OF ACTION

115.    Plaintiff realleges and restates the preceding numbered paragraphs as if fully set forth herein.

116.    Defendant treated Plaintiff adversely because he complained of and opposed unlawful discriminatory practices by Defendant.

117.    As a result of Defendant's actions, conduct, and omissions, including but not limited to those described above, Defendant discriminated against Plaintiff with respect to his compensation, terms, conditions, and privileges of employment and in retaliation for complaining and opposing unlawful discriminatory practices by Defendant, in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. 2000e-(3), thereby entitling Plaintiff to relief under the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5.

118.    Defendant's wrongful acts, conduct, and omissions were intentional and wanton and done with malice and/or a reckless indifference to Plaintiff's rights and feelings in violation of Civil Rights Act of 1991, 42 U.S.C. § 1981a. As a result of Defendant's actions, conduct, and omissions, including but not limited to those described above, Plaintiff incurred damages,

15

including but not limited to, lost back and future wages, employee benefits, lost employment opportunities, mental anguish, emotional distress, and embarrassment. Plaintiff is thereby entitled to an award of compensatory, punitive, and/or exemplary damages.

119.    As a direct and proximate result of Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

120.    Pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 e-5(k), Plaintiff is entitled to reasonable costs and attorneys' fees.

121.    Pursuant to Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a jury trial as to all issues so triable.

### AS AND FOR A SIXTH CAUSE OF ACTION

122.    Plaintiff realleges and restates the preceding numbered paragraphs as if fully set forth herein.

123.    Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

124.    During the course of Plaintiff's employment, Defendant, its agents, servants, and/or employees treated Plaintiff adversely in retaliation for his complaints and opposition to unlawful discriminatory conduct and engaged in a knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

125.    Defendant discriminated against Plaintiff with respect to compensation, terms, conditions, and privileges of employment in retaliation for his complaints and opposition to unlawful discriminatory conduct and in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

16

126.    Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiff's rights under the Human Rights Law of the State of New York.

127.    As a result of Defendant's actions, conduct, and omissions, including but not limited to those described above, Plaintiff incurred damages, including but not limited to, lost back and future wages, employee benefits, lost employment opportunities, mental anguish, embarrassment, and emotional distress.

128.    As a result of Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

129.    Pursuant to Article 15 of the New York Executive Law, as amended, § 297 (10), Plaintiff is entitled to reasonable costs and attorneys' fees.

130.    Plaintiff demands a jury trial as to all issues so triable.

## AS AND FOR A SEVENTH CAUSE OF ACTION

131.    Plaintiff realleges and restates the preceding numbered paragraphs as if fully set forth herein.

132.    By virtue of his employment by Defendant, Defendant and Plaintiff maintained a contract for employment.

133.    Plaintiff is a member of a racial minority.

134.    As a result of the actions, conduct, and omissions, including but not limited to those described above, of Defendant, its agents, servants, and/or employees, Defendant intended to discriminate against Plaintiff on the basis of his race.

135.    Defendant's wrongful acts, conduct, and omissions were intentional and wanton and done with malice and/or a reckless indifference to Plaintiff's rights and feelings in violation

of 42 U.S.C. §1981. As a result of Defendant's actions, conduct, and omissions, including but not limited to those described above, Plaintiff incurred damages, including but not limited to, lost back and future wages, employee benefits, lost employment opportunities, mental anguish, emotional distress, and embarrassment. Plaintiff is thereby entitled to an award of compensatory, punitive, and/or exemplary damages.

136.    As a direct and proximate result of Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

137.    Pursuant to 42 U.S.C. §1988, Plaintiff is entitled to reasonable costs and attorneys' fees.

138.    Pursuant to Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a jury trial as to all issues so triable.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

139.    Plaintiff realleges and restates the preceding numbered paragraphs as if fully set forth herein.

140.    Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

141.    Defendant, its agents, servants, and/or employees treated Plaintiff adversely because of his national origin and engaged in a knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

142.    Defendant discriminated against Plaintiff with respect to compensation, terms, conditions, and privileges of employment because of his national origin and in retaliation for his

complaints and opposition to unlawful discriminatory conduct and in violation of the Human Rights Law of the State of New York, Executive Law § 290 *et seq.*

143.    Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, were willful and wanton and done with a reckless disregard of Plaintiff's rights under the Human Rights Law of the State of New York.

144.    As a result of Defendant's actions, conduct, and omissions, including but not limited to those described above, Plaintiff incurred damages, including but not limited to, lost back and future wages, employee benefits, lost employment opportunities, mental anguish, severe emotional distress, and embarrassment.

145.    As a result of Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

146.    Pursuant to Article 15 of the New York Executive Law, as amended, § 297 (10), Plaintiff is entitled to reasonable costs and attorneys' fees.

147.    Plaintiff demands a jury trial as to all issues so triable.

## AS AND FOR A NINTH CAUSE OF ACTION

148.    Plaintiff realleges and restates the preceding numbered paragraphs as if fully set forth herein.

149.    As a result of these offensive acts, including but not limited to those described above, Defendant, its agents, servants, and/or employees, created a hostile working environment in which Plaintiff was intimidated, harassed, and undermined in his attempts to succeed.

150.    Throughout Plaintiff's employment with Defendant, Plaintiff brought the above-described unlawful conduct to the attention of his immediate supervisor and others.

151.   As a result, Defendant knew or through the exercise of reasonable diligence should have known of the wrongful and unlawful actions, conduct, and omissions of its agents, servants, and/or employees and took no remedial action.

152.   The effects of this hostile working environment were so severe and pervasive that it affected the terms, conditions, and privileges of the Plaintiff's employment, constituting unlawful discrimination because of national origin in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-2(a), thereby entitling Plaintiff to relief under the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(g).

153.   Defendant's wrongful acts, conduct, and omissions were intentional and wanton and done with malice and/or a reckless indifference to Plaintiff's rights and feelings in violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. As a result of Defendant's actions, conduct, and omissions, including but not limited to those described above, Plaintiff incurred damages, including but not limited to, lost back and future wages, employee benefits, lost employment opportunities, mental anguish, emotional distress, and embarrassment. Plaintiff is thereby entitled to an award of compensatory, punitive, and/or exemplary damages.

154.   As a direct and proximate result of the Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

155.   Pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 e-5(k), Plaintiff is entitled to reasonable costs and attorneys' fees.

156.   Pursuant to Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), Plaintiff demands a jury trial as to all issues so triable.

## AS AND FOR A TENTH CAUSE OF ACTION

157.    Plaintiff realleges and restates the preceding numbered paragraphs as if fully set forth herein.

158.    Throughout his employment with Defendant, Plaintiff was subjected to extreme and outrageous racist conduct including but not limited to having a banana dangled over his head while being called a monkey and a jigaboo.

159.    The extreme and outrageous racist conduct of Defendant and/or its employees and agents was directed at Plaintiff and was intended to cause him severe emotional distress.

160.    As a result of Defendant's and or its employee's/agent's extreme and outrageous racist conduct, Plaintiff suffered severe emotional distress.

161.    As a direct and proximate result of the Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

162.    Plaintiff realleges and restates the preceding numbered paragraphs as if fully set forth herein.

163.    At all times relevant, Defendant and Plaintiff were engaged in an employer/employee relationship.

164.    As an employer, Defendant owed Plaintiff a duty to provide a workplace free of harassment and discrimination.

165.    Defendant knew or had reason to know that its employees and/or agents were subjecting Plaintiff to harassment and discrimination including but not limited to directing racial

slurs and epithets at him as well as threats of physical violence which caused him to fear for his own safety.

166.   As a direct and proximate result of the Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff has been damaged in the amount of $2 million.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

1. On the first cause of action, Plaintiff demands judgment against Defendant in the amount of $2 million as actual damages for loss of revenue, including back pay and front pay, an equal amount as liquidated damages, and attorneys' fees, and such other and further relief as to this Court may seem just and proper.

2. On the second cause of action, Plaintiff demands judgment against Defendant in the amount of $2 million as actual damages for loss of revenue, including back pay and front pay, an equal amount as liquidated damages, and attorneys' fees, and such other and further relief as to this Court may seem just and proper.

3. On the third cause of action, Plaintiff demands judgment against Defendant in the amount of $2 million as actual damages for loss of revenue, including back pay and front pay, and an equal amount as liquidated damages, and attorneys' fees, and such other and further relief as to this Court may seem just and proper.

4. On the fourth cause of action, Plaintiff demands judgment against Defendant in the amount of $2 million as actual and compensatory damages for loss of revenue, including back pay and front pay, pain, suffering and mental anguish, and punitive damages together with interest, costs, expenses, and such other and further relief as to this Court may seem just and proper.

5. On the fifth cause of action, Plaintiff demands judgment against Defendant in the amount of $2 million as actual damages for loss of revenue, including back pay and front pay, pain, suffering and mental anguish, punitive damages, together with interest, costs, expenses and attorneys' fees, and such other and further relief as to this Court may seem just and proper.

6. On the sixth cause of action, Plaintiff demands judgment against Defendant in the amount of $2 million as actual damages for loss of revenue, including back pay and front pay, and punitive damages together with interest, costs, expenses, and such other and further relief as to this Court may seem just and proper.

7. On the seventh cause of action, Plaintiff demands judgment against Defendant in the amount of $2 million as actual damages for loss of revenue, including back pay and front pay, pain, suffering and mental anguish, punitive damages, together with interest, costs, expenses and attorneys' fees, and such other and further relief as to this Court may seem just and proper.

8.  On the eighth cause of action, Plaintiff demands judgment against Defendant in the amount of $2 million as actual damages for loss of revenue, including back pay and front pay, and punitive damages, together with interest, costs, expenses, and such other and further relief as to this Court may seem just and proper.

9.  On the ninth cause of action, Plaintiff demands judgment against Defendant in the amount of $2 million as actual damages for loss of revenue, including back pay and front pay, pain, suffering and mental anguish, punitive damages, together with interest, costs, expenses and attorneys' fees, and such other and further relief as to this Court may seem just and proper.

10. On the tenth cause of action, Plaintiff demands judgment against Defendant in the amount of $2 million as actual damages for mental anguish, pain, suffering and, punitive damages, together with interest, costs, expenses and attorneys' fees, and such other and further relief as to this Court may seem just and proper.

11. On the eleventh cause of action, Plaintiff demands judgment against Defendant in the amount of $2 million as actual damages for mental anguish, pain, suffering and, punitive damages, together with interest, costs, expenses and attorneys' fees, and such other and further relief as to this Court may seem just and proper.

DATED:      June 16, 2020
            Glens Falls, New York


                              FITZGERALD MORRIS BAKER FIRTH, P.C.


                              By:  Michael Crowe, Esq.
                                     Bar Roll No. 518118
                                   John D. Aspland, Jr., Esq.
                                     Bar Roll No. 512134
                              *Attorneys for Plaintiff*
                              68 Warren Street
                              Post Office Box 2017
                              Glens Falls, NY 12801
                              Tel.: (518) 745-1400
                              Email: mc@fmbf-law.com
                                     jda@fmbf-law.com